**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| J.G.D.C. (A-No. 205-157-899),<br>Petitioner,<br>v.<br>WARDEN OF GOLDEN STATE ANNEX, et al.,<br>Respondents. | Case No. 1:26-cv-07718-JLT-FJS<br><br>ORDER GRANTING IN PART THE PETITION FOR WRIT OF HABEAS CORPUS; GRANTING THE MOTION TO PROCEED PSEUDONYM; DENYING THE MOTION FOR TEMPORARY RESTRAINING ORDER AS MOOT; AND DIRECTING RESPONDENTS TO PROVIDE A SUBSTANTIVE BOND HEARING<br><br>(Docs. 1, 2, 3) |

## I. INTRODUCTION

Before the Court is J.G.D.C.'s request for a temporary restraining order (Doc. 3), filed in conjunction with his petition for a writ of habeas corpus brought under 28 U.S.C. § 2241 challenging his ongoing detention. (Doc. 1.) The government filed a response to the TRO and the underlying petition, asserting that Petitioner is lawfully detained under 8 U.S.C. § 1226(a). (Doc. 9.) For the reasons set forth below the Court, **GRANTS IN PART** the habeas petition.[1]

///

[1] When the Court set a briefing schedule on the motion for TRO, it ordered the parties to state their position as to whether the motion for TRO should be converted to a preliminary injunction without further briefing, whether the parties sought a hearing, and whether the parties sought additional briefing on the habeas petition. (Doc. 8.) Neither Petitioner nor Respondents request a hearing or further briefing. (*See* Docs. 9, 11.) As such, the Court decides this case on the underlying habeas petition on the present record.

## II. LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A.A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

## III. FACTUAL BACKGROUND

Petitioner is a citizen of Guatemala. (Doc. 1, ¶ 33.) Petitioner first immigrated to the United States in 2003 but returned to his home country after being processed for voluntary return. (Doc. 9-1 at 3.) Petitioner re-entered the United States sometime in 2010, (Doc. 1, ¶ 1), but was not encountered by federal immigration officials until July 2, 2013, after being arrested by local police on June 30, 2013, for driving under the influence. (*Id*. at ¶ 34; *see also* Doc. 9-2 at 2, 4.) After 48 hours in jail, Petitioner was released into ICE custody. (*See* Doc. 9-1 at 3.) On July 2, 2013, Department of Homeland Security issued a Notice to Appear charging Petitioner as removable. (*Id*.) Petitioner received a bond hearing before an Immigration Judge and was ordered released upon the posting of a $2,500 bond. (Doc. 1, ¶ 35.) On July 23, 2013, Petitioner was convicted of the DUI offense and driving without a license. (Doc. 9-1 at 3; Doc. 9-2 at 4.)

On June 25, 2015, Petitioner submitted an I-589 application for asylum, which remains pending. (Doc. 9-1 at 3; Doc. 1-4 at 1.) According to Petitioner, on June 9, 2017, USCIS approved his I-765 application for employment authorization. (Doc. 1, ¶ 38; *see also* Doc. 1-5 at 1.) On September 9, 2019, Petitioner was again arrested for driving under the influence. (Doc. 9-2 at 4–5.) On March 23, 2018, Petitioner was convicted of the DUI offense and driving without a license and sentenced to 40 days in jail with 48 months of probation. (*Id*. at 5; Doc. 9-1 at 3.) According to Petitioner, after his second DUI conviction, he enrolled in classes, complied with all requirements from the court, and completed probation. (Doc. 3 at 6.) On July 26, 2019, an Immigration Judge terminated Petitioner's removal proceedings for lack of jurisdiction because

DHS filed a defective NTA. (Doc. 1, ¶ 41; Doc. 1-3 at 1–3.) According to Petitioner, DHS did not appeal that decision or attempt to refile the NTA or detain the Petitioner at that time. (Doc. 1, ¶ 42.)

For approximately seven years, Petitioner lived freely in the United States with no pending removal proceedings open against him. (Doc. 1, ¶ 44.) Petitioner has had no further criminal arrests or convictions since his last DUI in 2017. (*Id*. at ¶ 45.) Petitioner's record of arrests and prosecutions confirms that Petitioner has had no further criminal violations. (Doc. 9-2 at 5–6.) On September 8, 2026, ICE was assigned to locate the Petitioner at his last known address and arrest him pursuant to an I-200 administrative warrant issued on March 25, 2026. (Doc. 9-1 at 2, 5.) That day, ICE took Petitioner into custody and served him with the administrative warrant, a notice of custody determination, and a Notice to Appear charging him as removable under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act. (*Id*. at 2–3, 5, 6, 7.) Petitioner was transferred to the Golden State Annex Facility, where he remains.

On September 21, 2026, Petitioner filed a petition for writ of habeas corpus and motion for TRO, arguing that Respondents violated the Fifth Amendment Due Process clause by re-detaining him without pre-deprivation notice and hearing and requesting immediate release from ICE custody. (Docs. 1, 3.) On September 30, 2026, Respondents filed an opposition arguing that Petitioner is lawfully detained under 8 U.S.C. § 1226(a) and should be required to exhaust his administrative remedies. (Doc. 9.) On October 6, 2026, Petitioner filed a reply. (Doc. 11.)

## IV. DISCUSSION

### A. Petitioner's Motion to Proceed Via Pseudonym

As a threshold matter, Petitioner asks this Court to permit him to proceed via pseudonym using his initials to protect his identity and his family from risk of harassment and retaliation. (Doc. 2.) Petitioner asserts that relevant factors weigh in favor of granting his motion because the litigation concerns information of a sensitive and highly personal nature, there is no risk of prejudice against Defendants, and it is in the public interest to allow him to proceed via pseudonym. (*Id*. at 2–5.) "To determine whether to allow a party to proceed anonymously when the opposing party has objected, a district court must balance five factors: '(1) the severity of the

threatened harm, (2) the reasonableness of the anonymous party's fears . . . (3) the anonymous party's vulnerability to such retaliation,' (4) the prejudice to the opposing party, and (5) the public interest.'" *See Doe v. Kamehameha Schools/Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1042 (9th Cir. 2010) (enumerating five factors the district court must consider when deciding whether to grant a motion for pseudonym) (citation omitted).

The Court has reviewed Petitioner's unopposed motion and finds the reasons advanced for proceeding under pseudonym warrant granting the requested relief. As Respondents do not oppose Petitioner's request to proceed pseudonymously and do not identify any actual, threatened, or risk of material prejudice that could result from Petitioner's use of a pseudonym, and given Petitioner provides he does not seek to withhold his identity from Respondents, (Doc. 2 at 4), the Court finds that Respondents would not suffer any prejudice if Petitioner were allowed to proceed under pseudonym. The Court is mindful of the public's interest in knowing the identity of the parties. However, upon weighing the reasonableness of Petitioner's fears relating to the sensitive nature of his asylum claims, fear of persecution, mental and physical health information; the lack of prejudice to Respondents; and the public interest in this action, the Court finds that Petitioner's need for anonymity outweighs the competing interest. *See Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067–68 (9th Cir. 2000) (citation omitted); *Doe v. Andrews*, No. 1:25-CV-00333-JLT-HBK (HC), 2025 WL 1531684 (E.D. Cal. May 28, 2025) (noting that "Courts regularly grant leave to proceed under a pseudonym in cases related to asylum proceedings," collecting cases, and granting immigration detainee's pseudonym request). Thus, the motion for pseudonym is **GRANTED**.

**B. Exhaustion**

As a prudential matter, habeas petitioners must exhaust available judicial and administrative remedy remedies before seeking relief. 28 U.S.C § 2241; *see also Castro-Cortez v. I.N.S.*, 239 F.3d 1037, 1047 (9th Cir. 2001), overruled on other grounds by *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 126 (2006). Courts may require exhaustion as a prudential matter when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass

of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003) (citation omitted); *Puga v. Chertoff,* 488 F.3d 812, 815 (9th Cir. 2007). If a petitioner fails to exhaust prudentially required administrative remedies, then "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011).

However, the exhaustion requirement may be waived if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury would result, or the administrative proceedings would be void." *Laing v. Ashcroft,* 370 F.3d 994, 1000 (9th Cir. 2004) (quotation marks and citation omitted). Here, pursuit of the available administrative remedy—namely, a custody redetermination hearing before an IJ pursuant to 8 C.F.R. § 1236.1(d)(1) which places the burden of proof on the *noncitizen*—is inadequate and inefficacious. *See Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) (explaining that at the custody redetermination hearing "the burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'") (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

This is because Petitioner was previously encountered and apprehended by immigration officials and subsequently released on a $2,500 bond after an IJ determined he was not a significant danger or flight risk. (*See* Doc. 1, ¶¶ 34–35; Doc. 9-1 at 3.) As such, he is entitled to a post-deprivation bond hearing where instead the *government* bears the burden of proof. *Pinchi v. Noem*, *et al.*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025) ("Even assuming *arguendo* that the post-detention bond hearing provided under section 1226(a) provides constitutionally sufficient process for those noncitizens who have never previously been detained and released by DHS, Garro Pinchi's circumstance is different. Her release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger"); *see e.g.*, *J.S.H.M. v. Wofford*, No. 1:25-CV-01309-JLT-SKO, 2025 WL 2938808, at

*17–18 (E.D. Cal. Oct. 16, 2025) (explaining that an individual who has been paroled from immigration custody after initial detention justifiably relies on the government's implied promise to allow them to live at liberty and their period of release heightens their liberty interest in remaining out of detention). As this court explained in *J.S.H.M.*, "[s]ince it is the government that initiated re-detention, it follows that the government should be required to bear the burden of proving a justification for the re-detention." *J.S.H.M*, 2025 WL 2938808, at *18. Thus, the Court waives the exhaustion requirement in this case.

**C. Detention Under 8 U.S.C. § 1226(a)**

As Respondents concede, (Doc. 9 at 1–3), Petitioner's detention is controlled by 8 U.S.C. § 1226(a), as someone who was formally encountered and apprehended by immigration officials, and subsequently released on bond into the interior of the country by an IJ after conducting a danger and flight risk determination. (*Id*. at 1; Doc. 1, ¶¶ 34–35); *see Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1165 (9th Cir. July 30, 2026); *J.S.H.M. v. Wofford*, No. 1:25-CV-01309-JLT-SKO (HC) (E.D. Cal. Oct. 16, 2025); *Ortiz Donis v. Chestnut,* No. 1:25-CV-01228-JLT-SAB (HC), 2025 WL 32879514 (E.D. Cal. Oct. 9, 2025); *M.R.R. v. Chestnut*, No. 1:25-CV-01517-JLT (HC), 2025 WL 3265446 (E.D. Cal. Nov. 24, 2025); *Espinoza v. Kaiser*, No. 1:25-CV-01101 JLT SKO, 2025 WL 2581185 (E.D. Cal. Sept. 5, 2025); *Aguilera v. Albarran*, No. 1:25-CV-01619 JLT SAB, 2025 WL 3485016 (E.D. Cal. Dec. 4, 2025); *Garcia v. Chestnut*, No. 1:25-CV-01907-JLT-CDB, 2025 WL 3771348 (E.D. Cal. Dec. 31, 2025); *Carlos v. Chestnut*, No. 1:26-CV-00007-JLT-SKO (HC), 2026 WL 145889 (E.D. Cal. Jan. 20, 2026). Accordingly, Petitioner's re-detention without a pre-deprivation hearing violated the Due Process Clause of the Fifth Amendment.

However, that is not the end of the inquiry. Petitioner was arrested and convicted of two DUIs in 2013 and 2018. (Doc. 9-1 at 3; Doc. 9-2 at 4–5.) Petitioner argues that there is no material change in circumstances justifying his re-detention because an IJ released him on bond after his 2013 DUI arrest and another IJ terminated his removal proceedings in 2019 after his 2018 DUI conviction. (Doc. 1, ¶ 3; Doc. 3 at 6; Doc. 11 at 3–4.) Petitioner argues he is entitled to immediate release because for more than seven years, DHS was aware of his second DUI

conviction and decided not to re-detain him. (Doc. 3 at 6; Doc. 11 at 1–4.) According to Petitioner, his last DUI conviction is eight years old and "[c]onvictions that DHS has known about for years, and that prompted no custody action when they occurred, cannot supply the changed circumstances that *Matter of Sugay* requires before a prior release may be revisited." (Doc. 11 at 3–4 (citing *Matter of Sugay*, 17 I&N 637, 640 (BIA 1981).)

The Court is not persuaded by such argument. First, *Sugay* does not stand for this proposition. *See Matter of Sugay*, 17 I&N at 640 (explaining that there must be a change in circumstances before DHS can modify or change a previous bond determination made by an IJ). Second, Petitioner offers no evidence to suggest that DHS was aware of his conviction and affirmatively chose not to re-detain him. Petitioner infers that DHS was aware of the 2018 offense because an IJ terminated his removal proceedings in 2019. (*See* Doc. 11 at 4.) However, the IJ makes no reference to Petitioner's 2018 offense in its order terminating removal proceedings, which turned entirely on a defective NTA. (*See* Doc. 1-3 at 1–3.) Third, irrespective of whether DHS was aware, it is irrelevant to the issue of changed circumstances. Ultimately, Petitioner's 2018 DUI conviction likely violated the IJ's conditional release from 2013. (Doc. 1, ¶ 35); *see Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) ("He may have been on parole for a number of years and may be living a relatively normal life at the time he is faced with revocation. The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions."). Thus, the 2018 DUI conviction arguably constitutes a change in circumstances.

For the foregoing reasons, the Court **ORDERS**:

1. The petition for writ of habeas corpus (Doc. 1) is **GRANTED IN PART**.
2. The motion to proceed via pseudonym (Doc. 2) is **GRANTED**.
3. The motion for temporary restraining order (Doc. 3) is **DENIED** as **MOOT**.
4. **<u>Within 14 days</u>** of the date of service of this order, unless Petitioner consents to a later date, Respondent **SHALL** provide Petitioner with an individualized bond hearing before an immigration judge that complies with the requirements set forth in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), and where "the government must prove by clear and convincing evidence

that [Petitioner] is a flight risk or a danger to the community to justify denial of bond," *id.* at 1203. In the event Petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond," the immigration judge should consider Petitioner's financial circumstances and alternative conditions of release. *Hernandez v. Sessions*, 872 F.3d 976, 1000 (9th Cir. 2017).

5. At least 72 hours before the scheduled hearing, Petitioner **SHALL** receive notice of the hearing. He **SHALL** have the right to be represented by counsel at the hearing, and he **SHALL** be entitled to appear at the hearing. If counsel has filed an appearance in the immigration proceedings, at least 72 hours before the hearing, counsel **SHALL** receive notice of the scheduled hearing.

6. The Clerk of Court is directed to serve the Golden State Annex Detention Facility in McFarland, California with a copy of this Order.

7. The Clerk of Court is directed to close this case and enter judgment for Petitioner.

IT IS SO ORDERED.

Dated: October 22, 2026

[signature: Jennifer L. Thurston]
UNITED STATES DISTRICT JUDGE